# UNITED STATES DISTRICT COURT

# DISTRICT OF CONNECTICUT

|  |  |
|---|---|
| DANILO BRACHO,<br>   *Plaintiff*,<br>  v.<br>KENT SCHOOL<br>   *Defendant*. | No. 3:18-cv-0021 (MPS) |

## RULING ON MOTION FOR A NEW TRIAL

In this negligence case arising out of a bicycle accident, the jury returned a verdict for the defendant, Kent School, after eight days of evidence.  The plaintiff, Danilo Bracho, has filed a motion for a new trial (ECF No. 310), arguing that I erred in my instructions to the jury and that the verdict was against the weight of the evidence.  For the reasons set forth below, I deny the motion.[1]

## I.  BACKGROUND

The jury could reasonably have found the following facts.  During the spring of Bracho's freshman year at the Kent School, a private boarding school located in Kent, Connecticut, he participated in a road biking program offered by the School and led by a member of its faculty, John Hinman.[2]  The program was not competitive and involved a group of students, together with Hinman and another faculty member, riding bicycles on the country roads near the School a

---

[1] The plaintiff filed a motion for a new trial (ECF No. 307) and a corrected motion for new trial (ECF No. 310).  I deny both in this ruling.

[2] When the case was filed, Danilo Bracho was a minor and so his mother, Dinorys Bracho, filed the case on his behalf.  At the time of trial, however, Danilo had reached the age of majority and so the Court instructed the jury, with the parties' consent, that he was the only plaintiff.  The Clerk is instructed to amend the docket to reflect that Danilo Bracho is the only plaintiff.

few afternoons each week.  On the tenth bicycle outing of the spring semester, Bracho was seriously injured after his bicycle left the road and collided with a tree during a downhill descent on Bulls Bridge Road.

At trial, I instructed the jury on the seven ways in which Bracho claimed the School was negligent, each of which Bracho claimed was a proximate cause of his injuries: (1) by failing to warn Bracho about the risks of the road biking activity; (2) by failing to provide adequate supervision of the road biking activity; (3) by failing to provide Bracho adequate training or instruction before and during the road biking activity; (4) by failing to communicate to him, and failing to enforce, the rules and safety precautions required to keep him safe from harm while cycling on the road; (5) by selecting a route that the School knew or should have known was unsafe; (6) by failing to prohibit Bracho from continuing to participate in the road biking activity once it learned that his operation of the bike was unsafe; and (7) by allowing him to ride the descent on Bull's Bridge Road by himself.  At the close of Bracho's case, the School moved for judgment as a matter of law, arguing that no reasonable juror could find a violation of the standard of care or causation based on the evidence Bracho had presented.  I deferred ruling on the motion and submitted the case to the jury.  After deliberations, the jury found for the School, answering "no" to the first question on the verdict form, which asked "Do you find that the defendant was negligent in one or more of the ways alleged and that its negligence was a substantial factor in causing the plaintiff's injuries?"  Later, I denied the motion for directed verdict as moot and entered judgment for the defendant.  ECF Nos. 292 and 293.

In his motion for a new trial, Bracho argues that "(1) the Court committed harmful error by submitting to the jury the question of law whether the defendant owed a legal duty to the plaintiff, (2) the Court committed harmful error by failing to instruct the jury that, by reading and

2

signing the Road Biking Permission Form, [Bracho's brother] David and Danilo Bracho did not assume the risks of the activity and could not be found contributorily negligent, and (3) the verdict is against the weight of the evidence." ECF No. 310 at 1. I address each argument below, after setting forth the legal standard for new trial motions and, in some cases, providing more background to supply context for the issues involved.

## II.    LEGAL STANDARD

Rule 59 of the Federal Rules of Civil Procedure allows a district court to grant a new trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a). The Second Circuit has held that a district court should grant a motion for a new trial when it finds that "the jury has reached a seriously erroneous result or the verdict is a miscarriage of justice." *Song v. Ives Laboratories, Inc.*, 957 F.2d 1041, 1047 (2d Cir. 1992). In assessing such a motion, the "trial judge is free to weigh the evidence himself, and need not view it in the light most favorable to the verdict winner," and the court may grant such a motion "even if there is substantial evidence supporting the jury's verdict." *Manley v. AmBase Corp.*, 337 F.3d 237, 244–45 (2d Cir. 2003).

A motion for new trial may rest on a claim of instructional error. "Where the court's instruction misleads the jury as to the correct legal standard or where it fails to adequately inform the jury on the law, it will be deemed erroneous." *Cobb v. Pozzi*, 363 F.3d 89, 112 (2d Cir. 2004). An erroneous instruction requires a new trial unless the error was harmless. *Id.* The Second Circuit "emphatically do[es] not review a jury charge on the basis of excerpts taken out of context, but in its entirety to determine whether considered as a whole, the instructions adequately communicated the essential ideas to the jury." *United States v. Sabhnani*, 599 F.3d 215, 237 (2d Cir. 2010) (internal quotation marks and citations omitted).

III.     DISCUSSION

A.  Instructions on Whether the School Owed Bracho a Duty

After reciting Bracho's seven specifications of negligence and listing the elements of a

negligence claim, ECF No. 288 at 20, I instructed the jury as follows:

> **"1.  Violation of a Duty to Act with Reasonable Care**
>
> As to the first element, the plaintiff must show that the defendant owed him
> a duty to use reasonable care and that it failed to use reasonable care under
> the circumstances.  That is, he must prove that a duty existed and that, given
> the scope of that duty, the defendant failed to carry out the duty.
>
> i. Whether the Defendant Owed the Plaintiff A Duty
>
> A duty to use reasonable care may arise from either or both of two sources
> in this case.
>
> a. Foreseeability
>
> A duty to use care exists when a reasonable person, knowing what the
> defendant here either knew or should have known at the time of the
> challenged conduct, would foresee that harm of the same general nature as
> that occurred here was likely to result from that conduct.  If harm of the
> same general nature as that which occurred here was foreseeable, it does not
> matter if the manner in which any harm that actually occurred was unusual,
> bizarre, or unforeseeable.
>
> b. Special Relationship
>
> A duty to use care also exists when there is a special relationship.  A special
> relationship arises between a defendant and a plaintiff when the defendant
> takes custody of the plaintiff so as to deprive him of his normal powers of
> self-protection and thereby assumes a duty of care to the plaintiff.  One
> example of this type of special relationship is the relationship between a
> private school and the students in its custody or care.
>
> ii. Scope of the Duty
>
> Reasonable care is the care that a reasonably prudent person would use in
> the same circumstances…."

*Id.* at 20–21.  Bracho argues that I erred when I "submitted to the jury the pure legal question of

whether Kent School owed the plaintiff a duty of care, and when [I] refused to instruct the jury

that, because of the 'special relationship' between Kent and [Bracho], the school's duty is already established under binding Connecticut law." ECF No. 310 at 3. This argument fails for three reasons: (1) Bracho did not properly preserve it, (2) it is wrong on the merits, and (3) Bracho has failed to show that any error prejudiced him.

### i.    *Bracho Failed to Preserve His Argument*

Rule 51 of the Federal Rules of Civil Procedure allows a party to "assign as error: (A) an error in an instruction actually given, if that party properly objected," i.e., "stat[ed] distinctly [on the record] the matter objected to and the grounds for the objection," and (B) "a failure to give an instruction, if that party properly requested it and—unless the court rejected the request in a definitive ruling on the record—also properly objected." Fed. R. Civ. P. 51(d)(1), (c)(1). Bracho points out that, during the pretrial conference, I told counsel that, "if I don't give a request to charge that you submitted," then "I can be reversed regardless of whether you even raised it at the charge conference." ECF No. 308-4 at 3. That statement does not accurately reflect the above-quoted language of Rule 51(d)(1)(B), which provides that an objection is required to preserve an erroneous refusal to give even a charge requested in writing, unless the Court issued a "definitive ruling" on the request; but for purposes of this ruling, I will abide by what I told the parties at the pretrial conference and will refrain from relying on the separate-objection requirement of Rule 51(d)(B) for written requests to charge. It is well-established, however, that a party "is not entitled to have the exact language he proposes read to the jury," and that, "[i]n order to succeed on his challenges to jury instructions, appellant has the burden of showing that his requested charge accurately represented the law in every respect …." *United States v. Zodhiates*, 901 F.3d 137, 144 (2d Cir. 2018).

Bracho failed to preserve his claim that I erred in asking the jury to decide whether the

School owed a duty to Bracho and, in fact, Bracho's own proposed jury instructions urged me to

submit that question to the jury.  Bracho's proposed instructions included the following:

> "A cause of action in negligence is comprised of four elements: *duty*; breach of that duty; causation; and actual injury."

ECF No. 193-7 at 3 (emphasis added).  In addition, under "'First Element' … 'Duty of Care'

…," Bracho proposed the following instruction regarding "Special Relationship":

> A duty of care exists when there is a special relationship.  A special relationship arises between a defendant and a plaintiff when the defendant takes custody of the plaintiff so as to deprive him of his normal powers of self-protection and thereby assumes a duty of care to the plaintiff.  Examples of this type of special relationship include the relationship between a private boarding school and its students.

*Id.* at 5.  The latter instruction by Bracho directed the jury to decide whether "[a] duty of care

exists"—a question Bracho now contends I should *not* have submitted to the jury; indeed,

Bracho's proposed instruction on "special relationship" is substantively identical to the one I

gave, which is quoted above.

Similarly, Bracho urged me to direct the jury to determine whether a duty existed by

giving the following instruction on "foreseeability":

### Foreseeabilty

> To prove that an injury is a reasonably foreseeable consequence of negligent conduct, a plaintiff need not prove that the defendant actually foresaw or should have foreseen the extent of the harm suffered or the manner in which it occurred. Instead, the plaintiff must prove that it is a harm of the same general nature as that which a reasonably prudent person in the defendant's position should have anticipated, in view of what the defendant knew or should have known at the time of the negligent conduct. In other words, *the test for duty is whether an ordinary person in the defendant's position, knowing what the defendant knew or should have known, would anticipate harm of the general nature as that suffered by the plaintiff.*

ECF No. 193-7 at 11 (emphasis added).  That language was in line with the "foreseeability" instruction I gave, which is quoted above.  Further, when I asked Bracho's counsel at the charge conference whether he had any objection to my similarly worded foreseeability instruction, or to the two paragraphs that preceded it, which told the jurors that Bracho "must prove that a duty existed" and that they had to determine whether the School "owed [Bracho] a duty to use reasonable care," he responded that he did not.  Specifically, referring to the bottom of page 20 of the charge, which includes the subheading, "Violation of A Duty to Act with Reasonable Care" and instructs the jury that "the plaintiff must show that the defendant owed him a duty to use reasonable care," that "he must prove that a duty existed," and that "[a] duty to use reasonable care may arise from either or both of two sources in this case," I asked Bracho's counsel if he had any comments on that portion, i.e., on "anything before 'Special Relationship.'"  ECF No. 296 at 24; *see* ECF No. 288 at 20.  He responded that he did not.  ECF No. 296 at 24.  He later added a comment confirming his agreement to that portion of the charge by proposing a minor edit to the language, which I accepted.  *Id.* at 36–37.[3]  And while Bracho now challenges my later instruction to the jury, in the portion of the charge addressing the scope of the duty, that "[m]ore specifically, *if you find that a duty existed*, then that duty required the defendant ...," ECF No. 288 at 21 (emphasis added), he made no objection to this language during the charge conference, even after I read it aloud.  *See* ECF No. 296 at 44 (my referring to

---

[3] Mr. Ponvert: "Just one other thing though.  After (A) Foreseeability and (B) Special Relationship, I propose there be a sentence inserted that says: The Plaintiff does not need to prove both (A) and (B).  Proof of one is sufficient."  The Court: "How about if we say, in the beginning, 'A duty to use reasonable care may arise from either' --" Mr. Ponvert: "Yes."  The Court: "—of two sources in this case?"  Mr. Ponvert: "Either or both."  The Court: "Yeah, 'either or both of,' that's fine."  Mr. Ponvert: "Thank you."  The Court.  "All right.  That – just to be clear, that change is under whether the Defendant owed the Plaintiff a Duty.  'A duty to use reasonable care may arise from either or both of two sources in this case.'  I'm going to leave everything else the same."  ECF No. 296 at 36–37.

that sentence and engaging in lengthy colloquy with defense counsel), *id.* at 57 (Bracho's counsel suggesting other, unrelated changes to "scope of duty" section of instructions).

Bracho's argument that I erred "when [I] refused to instruct the jury that, because of the 'special relationship' between Kent and [Bracho], the school's duty is already established under binding Connecticut law," was not properly preserved either.  As noted above, my instruction on "special relationship" closely tracked his proposal.  *Compare* ECF No. 288 at 21 (actual instruction) *with* ECF No. 193-7 at 5 (Bracho's proposal).  So if giving that instruction—or the instruction on foreseeability—was erroneous (and as discussed below, it was not), then Bracho invited the error and may not now complain about it.  *See United States v. Ferguson*, 758 F.2d 843, 851 (2d Cir. 1985) (even in absence of proper indictment on charge of accessories after the fact, district court had power to find two defendants guilty as accessories after the fact because their request to charge the jury on that issue amounted to invited error: where defendants "specifically requested the instruction and successfully convinced the court to give it, even in the face of the informed opposition by the government," defendants' "deliberate and studied course of conduct displayed a lively cognition of their rights."); *Henry v. Dinelle*, 557 F. App'x 20, 22 (2d Cir. 2014) ("By requesting and approving the qualified immunity instruction, [plaintiff] invited the errors of which he now complains.  He cannot challenge them on appeal.").

Bracho now suggests that I should not have instructed the jury on the existence of a duty at all, but he points to nothing in the record showing he took this position previously and, as shown, his written requests to charge reflect a contrary position.  While, as he notes, I discussed with defense counsel at the charge conference the possibility of simply instructing the jurors that the School owed Bracho a duty without further elaboration and then focusing their attention on

the scope of the duty, defense counsel resisted this suggestion, ECF No. 296 at 33–34, and Bracho's counsel points to nothing in the record showing that he requested it.

To be sure, Bracho submitted supplemental proposed charges related to "special relationship" that I did not include verbatim in my instructions, ECF No. 275 at 2–3, but two of those proposed instructions did not differ in substance from mine.  *Compare* ECF No. 288 at 21 (My instruction that "[a] special relationship arises between a defendant and a plaintiff when the defendant takes custody of the plaintiff so as to deprive him of his normal powers of self-protection.  One example of this type of special relationship is the relationship between a private school and the students in its custody or care.") *with* ECF No. 275 at 2 (Bracho's "supplemental jury instruction No. 4" stating "Although the law of negligence typically does not impose a duty on one party to act affirmatively in furtherance of the protection of another, there are certain exceptions to that general proposition. One exception applies when there is a 'special relationship' between those parties, and one example of such a special relationship, along with a concomitant duty to protect, is the relationship between schools and their students.") and ECF No. 275 at 3 (Bracho's "supplemental instruction #5": "One who voluntarily takes the custody of another under circumstances such as to deprive the other of his normal opportunities for protection is under a duty to protect the other against unreasonable risk of physical harm.").

Bracho's other supplemental proposed instruction related to this issue—"Here, Kent's duty to protect Danilo derives from the fact that the school, in assuming physical custody and control over Danilo, effectively took the place of Danilo's parents"[4]—risked confusing the jury, in light of my instructions as a whole.  First, it described the source of the duty in a manner

---

[4] Plaintiff does not mention this supplemental instruction in his motion for new trial and he did not raise it at the charge conference.  But I address it because I told counsel that claims of instructional error were preserved if I did not give one of their written requests to charge, provided that their proposal was later found to be correct.

different from the "depriv[ing] … of normal powers of self-protection" language I used and

Bracho originally requested—language that comes straight from *Murdock v. Croughwell*, the

Connecticut Supreme Court's seminal case on the duty arising from a "special relationship."  268

Conn. 559, 566 (2004) ("Section 320 of the Restatement (Second) imposes a duty of care upon a

person who takes custody of another person so as to deprive him of his normal powers of self-

protection.").  While the Connecticut Supreme Court later used the "takes the place of parents"

language Bracho suggested in his supplemental instruction, *Munn v. Hotchkiss School*, 326

Conn. 540, 552 (2017), I was required neither to use the exact language Bracho proposed,

*Zodhiates*, 901 F.3d at 144 (a party "is not entitled to have the exact language he proposes read

to the jury"), nor to give the jury multiple instructions on the source of the "special relationship"

duty.[5]  *See, e.g., Howard v. Cincinnati Sheet Metal & Roofing Co.*, 234 F.2d 233, 235–36 (2d

Cir. 1956) (finding error in district court's unduly lengthy instruction and describing the "evils of

repetition in instructions": "When an instruction is once given which fully covers a subject, it

should not be repeated.  Such needless repetition amounts to an argument on the part of the court

and may mislead the jury.  It is not always reversible error, but it is always bad practice."

(internal quotation marks omitted)); *Dupre v. Fru-Con Eng'g Inc.*, 112 F.3d 329, 335 (8th Cir.

1997) ("Repetitious instructions that place undue emphasis on a certain aspect of a party's case

so as to the prejudice the jury require reversal.").  Second, by equating the School with Bracho's

parents, Bracho's proposal risked conflating the existence of a duty with the scope of the duty

---

[5] The *Munn* Court also used other formulations to describe the rationale for the duty arising from a special relationship, one of which closely tracked the "depriv[ing] of normal powers of self-protection" formulation I used. 326 Conn. at 551 ("[T]he relationship between a school and its students parallels aspects of several other special relationships – it is a custodian of students, it is a land possessor who opens its premises to a significant public population, and it acts partially in the place of parents.  As a general matter, one who voluntarily takes the custody of another under circumstances such as to deprive the other of his normal opportunities for protection is under a duty to protect the other against unreasonable risk of physical harm.  At heart, the duty to protect drives from the simple fact that a school, in assuming physical custody and control over its students, effectively takes the place of parents and guardians." (internal quotation marks and alterations omitted)).

and, worse, suggesting that the scope of the duty depended on what *Bracho's* parents would have done; I later instructed the jury, in the "scope of duty" section of the charge (to which Bracho does not now object) that, if a duty existed, it was the same duty that "*a parent of ordinary prudence* would exercise under comparable circumstances."  ECF No. 288 at 21 (emphasis added).

Bracho also points out that, at the charge conference, he requested yet another instruction on the issue of "special relationship," i.e., "it is beyond dispute that, as a general matter, a school having custody of minor children has an obligation to use reasonable care to protect those children from foreseeable harms during school-sponsored activities."  ECF No. 296 at 34.  As I suggested at the charge conference, *id.* at 34–35, I did not give this instruction for two reasons. First, the core of it—that "a school having custody of minor children has an obligation to use reasonable care to protect those children"—was already covered in the instructions I gave, which, as shown, closely tracked Bracho's earlier proposal.  ECF No. 288 at 21 ("A duty to use [reasonable] care also exists when there is a special relationship….  One example of this type of special relationship is the relationship between a private school and the students in its custody or care.").  Second, the rest of it—"protect those children from foreseeable harms"—touches upon the scope of the duty, a separate issue I covered after the "special relationship" charge.  *See id.* at 21.

In yet another series of proposed formulations at the charge conference, Bracho's counsel asked, in essence, that I delete parts of the "Special Relationship" instruction: "And so I think what B [i.e., "Special Relationship"] should say is: A duty to use care also exists when there is a special relationship, period.  I instruct you that such a special relationship is the relationship between a private school and the students in its custody or care."  ECF No. 296 at 29; *see also id.*

at 29–30 ("And so I think what the instructions should say is exactly what Connecticut law says, which is: I instruct you that such a special relationship is the relationship between a private school and the students in its custody or care.").  The only substantive difference between these formulations and the instruction I actually gave is that Bracho's first formulation would have omitted the second sentence, i.e., "[a] special relationship arises between a defendant and a plaintiff when the defendant takes custody of the plaintiff so as to deprive him of his normal powers of self-protection and thereby assumes a duty of care to the plaintiff," ECF No. 288 at 21, while his second formulation (apparently) would have omitted the first two sentences, the first sentence being "[a] duty to use care also exists when there is a special relationship."  Both sentences, however, appeared in Bracho's original proposal, ECF No. 193-7 at 5, which he never sought to withdraw, and track language from the Connecticut Supreme Court.  *See, e.g., Demond v. Project Serv., LLC*, 331 Conn. 816, 836–37 (2019) (noting that "a duty of care does not exist in the air, and caution must be exercised to ensure that a special relationship or other factors give rise to such a duty …."); *Murdock*, 268 Conn. at 566 (2004) ("Section 320 of the Restatement (Second) imposes a duty of care upon a person who takes custody of another person so as to deprive him of his normal powers of self-protection.  As the comments to [Section] 320 make clear, this rule is applicable to … private schools ….").  Finally, Bracho's counsel never requested that I instruct the jurors that they were required to find that the School *had custody* of Bracho, and such an instruction could have contradicted Bracho's other proposals regarding the "special relationship" instruction, which left to the jury the determination of whether Bracho was within the School's "custody or care."  *See e.g.*, ECF No. 296 at 29–30 ("And so I think what the instructions should say is exactly what Connecticut law says, which is: I instruct you that such a

special relationship is the relationship between a private school and the students *in its custody or care*." (emphasis added)).

In short, while Bracho now contends that I should simply have told the jurors that they were required to find that the School owed a duty to Bracho,—thereby removing the issue of the existence of a duty from the case—he points to nothing in the record suggesting he requested such a definitive measure at trial, and the record shows that he specifically requested instructions that would have asked the jury to decide whether a duty existed in terms very similar to the ones I used.

### ii.   *Bracho is Wrong on the Merits*

In any event, Bracho is incorrect in asserting that a trial court presiding over a negligence trial should never submit to the jury the question whether a defendant owes the plaintiff a duty. Connecticut courts routinely do so, because while, in general, the existence of a duty between two parties is a legal question, that question often depends on the facts and circumstances involved.  More specifically, in a negligence case, the question whether a duty is owed at all depends, in part, on whether the plaintiff's injury was foreseeable, which is often a jury question. *Vendrella v. Astriab Family Ltd. P'ship*, 311 Conn. 301, 331 (2014) ("Whether an injury was foreseeable is to be determined by the jury when the evidence creates a genuine issue of material fact as to that issue." (footnote omitted)); *Brooks v. Powers*, 328 Conn. 256, 273 (2018) ("[T]ypically, [foreseeability] is a question of fact for the jury," unless "a fair and reasonable person could reach only one conclusion" as to foreseeability).[6]  Thus, Connecticut's standard jury instruction regarding the existence of a duty in negligence cases—the same one I gave in this case without objection by Bracho—instructs the jury to decide whether the defendant owes

---

[6] In his reply brief, Bracho concedes that foreseeability was a question of fact for the jury in this case.  ECF No. 322 at 4.

the plaintiff a duty of care by determining whether "a reasonable person" in the defendant's position would have foreseen the harm that befell the plaintiff.  Connecticut Judicial Branch Civil Jury Instructions, §§ 3.6–7; *see also Wright v. Coe & Anderson, Inc.*, 156 Conn. 145, 152 (1968) (upholding trial court's instruction regarding "the test of the existence of a duty to use care," which focused on "the foreseeability that harm may result if it is not exercised"); *Mosely v. Hamilton*, 2 Conn. App. 680, 682 (1984) (trial court correctly instructed jury on foreseeability "in determining the existence of a duty to use reasonable care"); *Acelin v. SMJS Realty Partners, LLC*, No. HHDCV176080383S, 2019 WL 2142942 *2 (Conn. Super. Ct. Mar. 27, 2019) (noting that "[t]he jury here was instructed on the issues of duty and foreseeability").

Connecticut courts also submit to juries the question whether a duty of care arises from a "special relationship" under the facts of a particular case.  *See, e.g., Doe v. Saint Francis Hosp. and Med. Ctr.*, 309 Conn. 146, 168 (2013) (rejecting claims of instructional error, where, among other things, the trial court had instructed on special relationship as follows: "The relation between a hospital and a child obligates the hospital to protect the child from harm, if you find that the hospital had custody of the child at the time that the harm occurred.  To determine whether a custodial relationship existed, you must decide whether the plaintiff was deprived of his normal powers and/or opportunity of self-protection."); *Gajewski v. Pavelo*, 36 Conn. App. 601, 621 (1994) (rejecting plaintiff's challenge to trial court's "special relationship" jury instruction, noting that "[t]he trial court's instruction to the jury that it had to find a special relationship … states a fundamental premise of tort law that before there can be liability, there must be a breach of a duty of care owed by the defendant to the plaintiff, which, in turn, requires that there be a special relationship between the plaintiff and the defendant.").  In short, Bracho's

assertion that the existence of a duty is invariably "a question of law for the court," ECF No. 310 at 4, is mistaken.[7]

That leaves only his argument that it was error, *under the facts of this case*, to submit "the question of whether Kent School owed [Bracho] a duty to use reasonable care." ECF No. 310 at 6. He relies on *Munn v. Hotchkiss School*, 326 Conn. 540 (2017), in which the Connecticut Supreme Court answered affirmatively this certified question from the Second Circuit: "Does Connecticut public policy support imposing a duty on a school to warn about or protect against the risk of a serious insect-borne disease when it organizes a trip abroad?" *Id.* at 543. In *Munn*, the plaintiff, who had completed her freshman year at a private boarding school, joined other students and faculty on an educational trip to China, where she was bitten by a tick during a hike, contracting tick-borne encephalitis. *Id.* at 543. The Court held that "[b]ecause it is widely recognized that schools generally are obligated to exercise reasonable care to protect students in their charge from foreseeable dangers, and there is no compelling reason to create an exception for foreseeable serious insect-borne diseases, we conclude that imposing [on a school a duty to warn about or protect against the foreseeable risk of a serious insect-borne disease when it organizes a trip abroad] is not contrary to Connecticut public policy." *Id.* at 545. The *Munn* Court made clear that its holding was limited to the facts before it. In answering the question

---

[7] To be sure, there are situations where the question "[w]hether a duty exists is a question of law for the court." *Lawrence v. O and G Indus., Inc.*, 319 Conn. 641, 649 (2015), but such cases usually involve the public policy component of the duty inquiry. "The test for the existence of a legal duty entails (1) a determination of whether an ordinary person in the defendant's position, knowing what the defendant knew or should have known, would anticipate that harm of the general nature of that suffered was likely to result, and (2) a determination, on the basis of a public policy analysis, of whether the defendant's responsibility for its negligent conduct should extend to the particular consequences or particular plaintiff in the case." *Id.* at 650. The second component of this test involves the court's "mak[ing] a determination of the fundamental policy of the law, as to whether the defendant's responsibility should extend to [particular types of harms]." *Id.* That inquiry, in turn, involves judicial consideration of "(1) the normal expectations of the participants in the activity under review; (2) the public policy of encouraging participation in the activity, while weighing the safety of the participants; (3) the avoidance of increased litigation; and (4) the decisions of other jurisdictions." *Id.* I did not task the jury in this case with the "public policy" portion of the duty inquiry.

posed by the Second Circuit, the court discussed at length whether the public policy of Connecticut should impose on the school a duty to protect the plaintiff against insect-borne disease during an overseas educational trip. *Id.* at 556–62. After concluding that it should, the court noted that its holding had limited reach: "[W]e are skeptical that recognition of a school's duty to warn about, or protect against, a serious insect-borne illness when organizing an educational trip abroad will lead to a flood of similar actions. Our research has disclosed a dearth of claims with fact patterns similar to the present case …." *Id.* at 562.

To be sure, the *Munn* court also stated that "it is beyond dispute that, *as a general matter*, a school having custody of minor children has an obligation to use reasonable care to protect those children from foreseeable harms during school sponsored activities," before addressing "[t]he question we must consider," i.e., the question whether to recognize such a duty in the case of insect-borne diseases affecting students during a school-sponsored overseas trip. *Id.* at 555–56 (emphasis added). But that statement did not foreclose submitting the question of the existence of a duty to the jury *in this case*, both because it was expressly a statement of the law "as a general matter" and because it *assumed* a factual predicate of "custody" ("a school having custody …"). Here, whether the School owed a duty of care to Bracho depended on a finding that Bracho was in the School's "custody or care," ECF No. 288 at 21, a question not answered by *Munn*, which involved a different factual scenario. Further, as discussed below, the School made some limited attempt to contest a finding of "custody" in this case. In short, like any other judicial decision, *Munn*'s holding is bound by the factual context in which it arose, which did not, of course, involve an off-campus bicycle ride.

To be clear, I do not mean to suggest that the School had a strong, or even a decent, argument that it did not owe Bracho a duty of care. It did not, as I pointed out to defense counsel

during the charge conference and as I discuss further below in the prejudice analysis; the School was a private school, my instruction told the jurors that "[o]ne example of [a] special relationship [giving rise to a duty of care] is the relationship between a private school and the students in its custody or care," ECF No. 288 at 21, and the facts of this case involved a school-sponsored activity. But there is a difference between allowing a party to present a weak argument on an issue to a jury—here, the issue of whether the School owed Bracho a duty of care at all—and removing that issue from the jury's purview altogether. Under the circumstances of this case, I do not believe that *Munn* or any other Connecticut authority required me to remove the issue of the existence of a duty from the jury's purview.[8]

### iii. Bracho Has Failed to Show Prejudice

Even if Bracho had preserved his claim and shown that my instruction was erroneous, I would deny the motion because he has failed to show that he suffered any prejudice. "A jury verdict will be reversed only when an appellant can show that the instructions considered as a whole prejudiced her. The party asserting error has the burden of demonstrating prejudice. An error is harmless only if the court is convinced that it did not influence the jury's verdict."

---

[8] Indeed, simply telling the jury that the School owed Bracho a duty of care would have been erroneous under Connecticut law because it would have skipped over the issue of foreseeability. Neither party raised this issue at the trial, and my instructions admittedly did not reflect this point, but the Connecticut Supreme Court has held that *even when there is a special relationship between the parties*, the plaintiff still must prove that the harm he suffered was foreseeable to the defendant for a duty to arise. *Fraser v. United States*, 236 Conn. 625, 632 (1996) ("In any determination of whether even a special relationship should be held to give rise to a duty to exercise care to avoid harm to a third person, foreseeability plays an important role."); *Doe v. Saint Francis Hosp. and Med. Ctr.*, 309 Conn. 146, 182–83 ("One who takes the custody of another under circumstances such as to deprive the other of his normal power of self-protection is under a duty to exercise reasonable care so to control the conduct of third persons as to prevent them from intentionally harming the other …. *In such cases, however, there is no duty to control the conduct of the third party unless, in light of the facts, the defendant knows or should know of the necessity and opportunity for exercising such control*. This is so because, in the absence of facts from which the defendant reasonably could anticipate the need to control the conduct of the third party, there would be no justification for holding the defendant responsible for failing to take steps to prevent any harm inflicted on the plaintiff by the third party." (emphasis added)).

*Woods v. START Treatment & Recovery Ctrs., Inc.*, 864 F.3d 158, 169 (2d Cir. 2017).  I am so convinced in this case, to the extent there was an error.

        a.  <u>The Closing Arguments</u>

As noted, although I could find no Connecticut case that foreclosed submitting the issue to the jury, any argument that the School did not owe a duty of care to Bracho under the circumstances in this case was a weak one, at best, given that the School is a private boarding school, that Bracho was participating in a school-sponsored program, that faculty members accompanied students on the ride (although the permission form advised that students would sometimes be riding alone), and that I instructed the jury that "[o]ne example of [a special relationship creating a duty of care] is the relationship between a private school and the students in its custody or care."  ECF No. 288 at 21.  Not surprisingly, then, the School's counsel did not dispute that his client owed Bracho a duty during his closing argument.  To the contrary, he told the jurors they should decide the case based on "what a parent of ordinary prudence would have done," ECF No. 297 at 76—which assumed that a duty existed and reflected my instruction about the scope of that duty.  *See* ECF No. 288 at 21 (instructing jury that school was required "to exercise such care over the plaintiff that a parent of ordinary prudence would exercise"); ECF No. 297 at 76 (Defense counsel's argument: "Any prudent parent would have allowed Danilo [Bracho], who owned two bicycles growing up, to participate in the biking activity.  No prudent parent would have prevented Danilo from riding down Bulls Bridge Road, especially when he had just done it a week before."); *see also id.* at 84 ("Again, return to the reasonably prudent parent standard the Judge just instructed you about.").

True, defense counsel also suggested at one point during his closing that Bracho was not in the School's custody—although this appeared to be more because he did not like the word

"custody" than because he was attempting to deny that a duty existed at all.  *Id.* at 77 ("[Bracho's

counsel] has used the word 'custody' as though [Bracho] was a ward of the state.  But he made

his own decisions at school, including what activities to participate in….  If [Bracho] was really

in Kent School's custody, Kent School would not have had to ask for permission from

[Bracho's] parent or guardian for him to participate in activities like skiing and road biking.").

And in the next breath, defense counsel returned to argument that assumed that Kent owed

Bracho a duty of care: "Kent took precautions in the bike activity.  Kent absolutely cares about

students' safety and cares that this accident happened to one of its students….  It cares about all

the students."  *Id.* at 77–78; *see also id.* at 78 ("Mr. Marble and Mr. Hinman were careful to set

up the program safely and correctly.").  Further, as the School points out, my instruction stated

that one "type of special relationship is the relationship between a private school and the students

in its custody *or* care."  ECF No. 288 at 21 (emphasis added).  So defense counsel's quibble

about "custody" did not convey to the jury that the School was denying it owed any duty at all,

especially given defense counsel's multiple references to the School's "care" for its students.[9]

ECF No. 297 at 70, 77–79, 84.  Indeed, the "care" that the School and Mr. Hinman took in

operating the biking activity was one of defense counsel's themes in summation.  *See id.*  His

other themes were that Bracho had failed to prove causation or a deviation from any standard of

---

[9] The same point addresses Bracho's argument about the testimony of one of the school's witnesses, Mr. Cataldo, who briefly fenced with Bracho's counsel's on cross-examination regarding whether the School had "custody" over Bracho.  *See* ECF No. 310 at 12–13.  During closing argument, Defense counsel did not mention Mr. Cataldo's testimony on this point.  Bracho's counsel did, first suggesting that Mr. Cataldo had testified that the school *did* have custody over Bracho: "Mr. Cataldo, he agreed that a school having custody of minor children has an obligation to use reasonable care to protect those children from foreseeable harms during school-sponsored activities."  ECF No. 297 at 43.  In rebuttal, Bracho's counsel ridiculed Mr. Cataldo's testimony that the school might not have custody because some children return home before Thanksgiving, calling that testimony "outrageous."  *Id.* at 100.  This hardly suggests that the School was pressing the point that it owed no duty to Bracho.

care, *id.* at 73,82–84, 90–92, 94—all of which conveyed to the jury that the School owed Bracho a duty but did not breach it and did not cause Bracho's injuries.

Plaintiff's counsel likewise said nothing about the existence of a duty in his closing argument other than to tell the jurors, in effect, that I had already instructed them that the School owed a duty to Bracho and that they therefore need not spend time on the question of whether a duty existed. *Id.* at 41–42 ("[A]s Judge Shea just explained, a duty to use care exists when a reasonable person [in the defendant's circumstances] would foresee the harm …; or a duty of care also exists when there is a special relationship between the parties, such as the relationship between a private school and the students in its custody or care. Because this special relationship exists here, Kent's duty to act with reasonable care has been proven. You need not detain yourself with that element of the negligence claim, and you can move on immediately to the question whether the Defendant exercised reasonable care under the circumstances …."). The rest of Bracho's counsel's 45-minute summation (not including rebuttal) focused, sensibly, on breach, causation and damages. *See, e.g.*, *id.* at 40 ("To establish that Kent School was negligent …, the Plaintiff must prove … one, violation of a duty to act with reasonable care; two, causation; and three, injury."); *id.* at 42–45 (discussing scope of school's duty); *id.* at 46–58 (discussing school's breach of duty); *id.* at 59–60 (discussing causation); *id.* at 61–62 (discussing contributory negligence); *id.* at 62–68 (discussing damages). In short, the battleground the parties presented to the jury in this case was over whether the plaintiff had proved a breach of duty, causation, and damages—not over whether the School owed Bracho a duty at all. Under these circumstances, it is highly unlikely the jury rendered a verdict against Bracho on the ground that the School did not owe him a duty of care.

   b. <u>The Evidence</u>

Bracho's inability to show prejudice becomes even clearer upon examination of the evidence, which shows that while the School had, at best, a weak basis for contesting the existence of a duty, it had strong grounds for contesting breach of duty and causation.  Bracho's case suffered from serious flaws.[10]  First, there was a gaping hole in his causation evidence.  He had bicycled down the hill on Bull's Bridge Road without incident on an earlier ride with Hinman and the other students, and he had not fallen or been injured in any of the nine rides the group had undertaken in the weeks before the crash, which also included descents.  ECF No. 282 at 74, 88, 97; ECF No. 284 at 119, 127, 129.  Worse, he testified that he had little memory of the accident, did not know what caused it, and did not remember losing control of the bike.  *Id.* at 132–33.  And the closest thing to an eyewitness—a UPS truck driver who was driving in the other direction—did not actually see Bracho's bicycle leave the road.  ECF No. 281 at 110.  This witness saw Bracho only briefly and did not know how fast he was traveling; the most he could say was that he observed Bracho applying the rear brakes and "straighten[] up" as he "came out of his lean" into a turn as the UPS truck passed him.  *Id.*at 110–13, 120.  The dearth of causation evidence left Bracho's counsel, when it was his turn to address causation in closing argument, to rely on a medical record reflecting a conversation Bracho had had with a treating physician during his months in the hospital after the accident.  According to the record, which stated that Bracho remembered only "bits and pieces" of the accident, he told the physician that he recalled

---

[10] As noted above, the School moved for judgment as a matter of law under Rule 50 after Bracho presented his case, and I deferred, submitting the case to the jury.  After the jury rendered its verdict, I denied the School's motion as moot.  In opposing the motion for new trial, the School argues that if I otherwise agree with Bracho's arguments, I should revisit that ruling and grant its motion for judgment as a matter of law.  I decline to reach the issue for two reasons.  First, I do not otherwise agree with Bracho's arguments and it is therefore unnecessary to address the issue.  Second, if the Second Circuit disagrees with me and remands the matter so that I must address that motion, I would benefit from fulsome briefing by the parties, with citations to the record, on the issues of breach of duty and causation, which were the grounds for the School's motion.  My remarks in the text about the evidence are not meant to express an opinion one way or the other whether Bracho's proof on breach of duty and causation was so feeble as to be insufficient as a matter of law.

seeing the UPS truck and turning to avoid it, leading him off the road.  *See* ECF No. 284 at 55. If anything, that bit of evidence suggested that the most immediate cause of the accident was Bracho's reaction to seeing an oncoming truck as he rounded a curve—rather than anything the School did or did not do.[11]  Indeed, Bracho acknowledged that he had passed oncoming cars without incident on previous rides with the school group, and the evidence was undisputed that he had successfully negotiated earlier descents.  *Id.* at 108–09, 133–34.

With little evidence of a causal link between the School's conduct and Bracho's injuries, Bracho's counsel resorted to asking the jury, essentially, to speculate about various things Hinman or the School might have done differently to avoid the crash.  *See* ECF No. 297 at 59 ("If Mr. Hinman did exactly what he did on the Ore Hill Road descent [i.e., riding immediately in front of Bracho], there'd be no crash.  If Mr. Hinman taught [Bracho] how to control the bike when a car is suddenly seen in the oncoming lane, more likely than not, there'd be no crash.  If Hinman had taught him how to brake and not to lock the rear wheel, it would have been less likely that [Bracho] would have crashed….. If there had been a well-trained coach, more likely than not there would not have been a crash.  If there was a second assigned coach, not just another recreational rider, more likely than not there would not have  been a crash …."). Bracho's counsel also argued that the School should have barred Bracho from participating in the

---

[11] In closing argument, Bracho's counsel made much of a ride occurring before the accident in which Bracho had approached the oncoming lane while descending a hill and Mr. Hinman had corrected him.  *See* ECF No. 297 at 48 (arguing that Hinman's telling Bracho his riding was "unacceptable" on that occasion was "so lacking in responsible coaching that it would lead most kids probably not to share again if they were engaging in behavior that they thought was unsafe"); *id.* at 59 ("If [Bracho] was prohibited from participating in the program after it became clear that he couldn't ride safely, the crash would never have occurred."); *see also* ECF No. 284 at 42 (Bracho's testimony that Hinman had "corrected" him on that occasion).  He also emphasized Hinman's statement to the police that Bracho sometimes rode faster than he should and had "scared" him in the past.  ECF No. 297 at 58. But neither piece of evidence suggests that something Hinman did or did not do proximately caused Bracho to react in a particular way when he saw a UPS truck coming in the other direction on Bull's Bridge Road.  Indeed, Bracho testified that, at the time of the accident, he and the truck were both in their correct lanes of travel on Bull's Bridge Road, ECF No. 284 at 131-33; there was no evidence that he nearly crossed into the oncoming lane on the day of the accident, unlike the occasion on which Hinman had "corrected" him.

biking program altogether—either from the outset because he was too inexperienced or after he told Hinman he had nearly crossed into an oncoming lane during an earlier ride—and that such a step would have prevented the crash.  But despite his efforts to portray himself at trial as inexperienced, unskilled rider, there was substantial evidence to the contrary, including Bracho's own testimony.  *See* ECF No. 284 at 91, 119–20, 123, 130.  And it was at least debatable whether the School's decision not to exclude Bracho from the road biking activity was a *proximate* cause of Bracho's injuries.  *Ruiz v. Victory Properties, LLC*, 315 Conn. 320, 329 (2015) ("Because actual causation, in theory, is virtually limitless, the legal construct of proximate cause serves to establish how far down the causal continuum tortfeasors will be held liable for the consequences of their actions.").  Finally, Bracho offered no expert testimony or other evidence that barring him from participation in the biking activity was required of a "parent of ordinary prudence" or by any applicable standard of care.  Indeed, Bracho presented no expert testimony on liability at all, attempting instead to rely on the School's two liability experts, but neither of them opined that the School had departed from any applicable standard of care.  *See* ECF No. 282 at 50–51 (Charles testifying that the biking activity was "incredibly well supervised" and that the choice of rides was safe and appropriate); ECF No. 284 at 262 (Broker expressing "overall opinion" that Hinman "did a really nice job of running the overall activity").  In the face of these shortcomings in his case on breach of duty and causation—the battleground of this case—Bracho cannot show that he was prejudiced by any erroneous instruction on the existence of a duty.

        c.  <u>The General Verdict Rule</u>.

      Invoking the "general verdict rule," Bracho argues that I must nonetheless conclusively presume that any instructional error was harmful.  ECF No. 310 at 15.  "The general

verdict rule was developed to determine the viability of a verdict in favor of a plaintiff when alternative theories for imposing liability are given to the jury, but one of those theories should not have been submitted. In such cases, the usual course is to reverse the verdict and order a new trial because it is impossible to determine whether the invalid theory was or was not the sole basis for the verdict." *Bruneau ex rel. Schofield v. South Kortright Cent. Sch. Dist.*, 163 F.3d 749, 759 (2d Cir. 1998), *abrogated on other grounds by Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246 (2009). The rule also "applie[s] where … the verdict was in favor of the defendant," and where, although the trial court submits only one theory of liability to the jury, the claim submitted had multiple elements and "we cannot be certain which element or elements the jury thought plaintiff failed to prove." *Id.* at 759.

The general verdict rule also comes with a preservation requirement, however, and Bracho failed to satisfy that requirement because he submitted no verdict form or special interrogatories that would have asked the jury for separate determinations on the existence of a duty and the breach of such duty. In *Morse v. Fusto*, the Second Circuit held that the "general-verdict rule is subject to waiver," and rejected the defendants' attack on the jury's general verdict for the plaintiff where the district court had concluded that one of the three factual bases underpinning the plaintiff's claim failed for lack of proof. 804 F.3d 538, 551 (2d Cir. 2015). "Having failed to ask for a special verdict, request interrogatories to supplement a general verdict with respect to the three separate factual bases submitted by [plaintiff] to the jury, or otherwise object to the form of verdict sheet or jury instructions ultimately submitted to the jury, the defendants' general-verdict rule argument is waived. They cannot now complain that it is impossible to know whether the verdict would have been different had the inadequately supported [factual basis] been withdrawn from the jury's consideration." *Id.* at 551–52. The

*Morse* Court relied on and quoted approvingly a negligence case in which the Ninth Circuit had found that the defendant waived his argument that the jury's general verdict was flawed because four of the eight specifications of negligence submitted to the jury "were unsupported by sufficient evidence":

> "[L]itigants have the responsibility to request or submit special verdict forms. Litigants like Maguire who wish to challenge the sufficiency of the evidence as to some, but not all, specifications of negligence must present an appropriate record for review by asking the jury to make separate factual determinations as to each specification. Any other rule would unnecessarily jeopardize jury verdicts that are otherwise fully supported by the record on the mere theoretical possibility that the jury based its decision on unsupported specifications. We will not allow litigants to play procedural brinkmanship with the jury system and take advantage of uncertainties they could well have avoided.

*McCord v. Maguire*, 873 F.2d 1271, 1273, 1274 (9th Cir. 1989); *see Morse*, 804 F.3d at 552 (setting forth the same block quotation).

Bracho, too, has failed to "present an appropriate record for review" of his general verdict argument. At the charge conference, his counsel specifically approved the verdict form I later submitted to the jury. Bracho's counsel stated: "Yes, that's fine for the Plaintiff" when asked about the first question on the form—"Do you find that the defendant was negligent in one or more of the ways alleged and that its negligence was a substantial factor in causing the plaintiff's injuries[?]" ECF No. 296 at 84; *see also id.* at 87 (Bracho's counsel indicating he had no comments on the first page of the verdict form). The jury later answered that question, "no," finding for the School. Further, Bracho never requested special interrogatories or a verdict form that would have separated the question of the existence of a duty from the question of breach of duty. The only proposed verdict form he submitted would have asked the jury to render a verdict on each of ten separate specifications of negligence, but none of those ten distinct queries separated the existence of a duty from the breach of the duty *See* ECF No. 193-9 at 2 (E.g., "Have the plaintiffs proven … that … Kent School … was negligent in failing to accurately

assess Danilo's ability to safely operate a bicycle before and/or during the Road Biking Intramural Sport?" and  "Have the plaintiffs proven … that Kent School … was negligent in failing to instruct Danilo to safely operate bicycle before and/or during Road Biking?").  So even if I had used this form, the jury's verdict would still not have revealed whether it had found for the defendant because it concluded there was no duty or because it concluded there was no breach of a duty.[12]  Because he specifically acquiesced in the verdict form used and failed to submit appropriate jury interrogatories, Bracho cannot take advantage of the jury's general verdict to argue that any instructional error was harmful.

Bracho resists this conclusion, noting that, in *Morse*, the defendant had not only failed to request jury interrogatories but had also failed to "object to … jury instructions ultimately submitted to the jury."  ECF No. 322 at 7 (quoting *Morse*, 804 F.3d at 552).  As I have shown, Bracho, too, failed to object properly to (or otherwise agreed to) the jury instructions he challenges, but even if he had made a proper objection to the jury instructions, he would still have waived the ability to invoke the general verdict rule.  As the *Morse* court's approving quotation of the Ninth Circuit's decision in *McCord* suggests, the critical issue is whether the party invoking the rule has "present[ed] an appropriate record for review by asking the jury to make separate factual determinations," *McCord*, 873 F.2d at 1274, so that it is clear whether the jury relied on an improper ground.  As noted, Bracho requested no verdict form, jury interrogatory, or other mechanism that would have asked the jury to make a separate finding on the question he now argues was erroneously submitted to the jury, i.e., whether the School owed

---

[12] I would not have used Bracho's proposed form in any event because it included some specifications of negligence not pled in his complaint and others that marshaled evidence or were otherwise phrased in a manner that would have been unfairly prejudicial to the School.  *See, e.g.,* ECF No. 193-9 at 3 ("Have the plaintiffs proven … that … Kent School … was negligent in allowing Danilo to continue to participate in Road Biking after John Hinman learned that [Bracho] sometimes went faster than he should, had failed to negotiate a turn properly, had entered or come close to entering the oncoming lane, or had ridden in any other potentially dangerous way?").

a duty to Bracho.  He thus cannot now complain that any error in failing to instruct the jury that the School owed a duty to Bracho was prejudicial.  *See also Mitsubishi Elec. Corp. v. Ampex Corp.*, 190 F.3d 1300, 1304 (Fed. Cir. 1999) (defendant waived reliance on general verdict rule even though defendant originally requested special interrogatories for separate claims of patent invalidity where trial judge decided to simplify verdict form to submit only a single invalidity question and where defendant "did not press the argument for the separate theories of invalidity"); *Stern v. City of New York*, 665 F. App'x 27, 29 (2d Cir. 2016) (noting that "[w]e are somewhat doubtful that [plaintiff] can avail himself of the general verdict rule, given that he failed to request special interrogatories to the jury regarding the basis for its probable cause determination," but ruling against the plaintiff on other grounds); *Monsour v. New York State Off. for People With Developmental Disabilities*, No. 1:13-cv-00336 (BKS/CFH), 2018 WL 3349233, at *12 (N.D.N.Y. July 9, 2018) (rejecting defendant's challenge to jury verdict for plaintiff on Rehabilitation Act retaliation claim where "the jury's general verdict form did not identify on which adverse action(s) it relied," because "Defendant … did not seek special interrogatories as to the allegations, and the Court must therefore let the jury's verdict stand if there is sufficient evidence to support a reasonable juror's finding that Defendant … subjected Plaintiff to at least one adverse action in retaliation for at least one of the two protected activities in which Plaintiff engaged.").

In any event, "the general verdict rule does not mandate reversal in all circumstances. We have specifically recognized the possibility of applying harmless error analysis where appropriate to avoid the usual course of reversal and new trial. Harmless error arises when we are sufficiently confident that the verdict was not influenced by an error in the jury charge." *Bruneau ex rel. Schofield*, 163 F.3d at 759–60; *see also Chowdhury v. Worldtel Bangladesh*

*Holding, Ltd.*, 746 F.3d 42, 50 (2d Cir. 2014) ("[W]e have recognized, in [the context of a general verdict] that harmless error arises when we are sufficiently confident that the verdict was not influenced by an error in the jury charge.").  As my discussion of the closing arguments and the trial evidence makes clear, I am "sufficiently confident" that the verdict was not influenced by any error I made in instructing the jury about whether the School owed Bracho a duty of care.

### B.  Instructions on Road Biking Permission Form

 Bracho next argues that I erred by "failing to instruct the jury that, by reading and signing the School permission form, David and Danilo Bracho did not assume the risks of the road biking activity, and that the form could not be used to find Danilo's family contributorily negligent."  ECF No. 310 at 22.  This argument fails for the same reasons Bracho's previous instructional challenge failed: It was not preserved, it is wrong on the merits, and Bracho has failed to show that any error prejudiced him.  I begin by offering some additional background for context.

*i.   Additional Background*

The School required participants in the Road Biking Activity to obtain the permission of a parent or guardian using the following form:

# KENT SCHOOL
## ROAD BIKING PROGRAM
PARENT/GUARDIAN PERMISSION FORM

I give permission to _____ to participate in Kent School's Spring Road Biking Program. I acknowledge that _____ has biking experience and is familiar with basic safety precautions.

I understand this is a recreational program (see program description below) with no instruction. Students must abide by all rules and safety precautions communicated by the faculty supervisor. The nature of the program means that students will not be accounted for at all times and each participant assumes all responsibility and liability associated with the risks inherent in biking. Helmets are required.

In the event of an accident or injury, I release Kent School and its faculty from any and all legal obligation or liability. The student and parents understand all risks associated with participating in a road biking program. These risks include riding a bicycle on roads that will be shared with cars, riding at times without immediate supervision, traveling long distances without a trailing vehicle or confirmed cell phone reception, insect bites and inclement weather. Both student and parents agree, without limitation, to indemnify Kent School and hold it harmless from and against any and all loss, damages, liability, cost and expenses (including counsel and court costs), arising out of or in any way connected with any and all litigation or claims asserted with respect to any injury of person(s) or damage to property resulting or arising out of the participation in the road biking program.

Program Description:

*Road biking sticks to secondary roads whenever possible, including some dirt roads that are easily navigable by road bike (e.g. Macedonia Park and Schagticoke Rd.). We cover about 50 miles total the first week, working towards 80-100 later in the spring. The activity is limited to seven and is open to all, but students must provide their own bikes (and helmets). Road, touring, or cyclocross bike are suggested. (Hybrid and mountain bikes have frame geometries that are inefficient for the road.)*

Student Name          _____

Parent Name           _____

Parent Signature      _____

Date                  _____

Completed form can be returned, faxed to 860-927-6039 or scanned to schmidta@kent-school.edu

ECF No. 201-1 at 2.  Bracho's adult brother, David Bracho, signed this form on his behalf before the accident occurred.  ECF No. 233-1 at 2.  But in part because Connecticut law "does not favor contract provisions [that] relieve a person from his own negligence" and will not enforce them unless they meet an "exacting standard," *Hanks v. Powder Ridge Rest. Corp.*, 276 Conn. 314, 321–22 (2005), I granted in part Bracho's motion in limine seeking to exclude this form, ruling that the form was admissible only if redacted to eliminate references to release and indemnification and that defense counsel was barred from "submit[ting] evidence of, refer[ring] to, or mak[ing] argument concerning waiver or release."  ECF No. 247.[13] After the form was redacted as I ordered, it appeared as follows:

---

[13] Bracho does not challenge my ruling on his motion in limine except in a brief reference in a footnote, ECF No. 310 at 30 n.16, which I do not consider to be adequate briefing to raise the issue.  *See United States v. Quinones*, 317 F.3d 86, 90 (2d Cir. 2003) ("[I]t bears recalling our well-settled rule that we do not consider an argument mentioned only in a footnote to be adequately raised or preserved for appellate review."); *In re Gen. Motors LLC Ignition Switch Litig.*, 339 F.Supp.3d 262, 279 n.2 (S.D.N.Y. 2018); *Connecticut Invs. LLC v. KDP, LLC*, No. 5:20-cv-179, 2021 WL 3519709, at *8 (D. Vt. Apr. 29, 2021) (finding footnoted argument inadequately briefed).

## KENT SCHOOL
## ROAD BIKING PROGRAM
PARENT/GUARDIAN PERMISSION FORM

I give permission to _____Danilo Pita Bracho_____ to participate in Kent School's Spring Road Biking Program.  I acknowledge that _____Danilo_____ has biking experience and is familiar with basic safety precautions.

I understand this is a recreational program (see program description below) with no instruction.  Students must abide by all rules and safety precautions communicated by the faculty supervisor.  The nature of the program means that students will not be accounted for at all times ████████████████████████████████████████████ ████████████  Helmets are required.

████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████ include riding a bicycle on roads that will be shared with cars, riding at times without immediate supervision, traveling long distances without a trailing vehicle or confirmed cell phone reception, insect bites and inclement weather. ████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████

Program Description:

*Road biking sticks to secondary roads whenever possible, including some dirt roads that are easily navigable by road bike (e.g. Macedonia Park and Schagticoke Rd.). We cover about 50 miles total the first week, working towards 80-100 later in the spring. The activity is limited to seven and is open to all, but students must provide their own bikes (and helmets). Road, touring, or cyclocross bike are suggested. (Hybrid and mountain bikes have frame geometries that are inefficient for the road.)*

Student Name _____Danilo Pita Bracho_____

Parent Name _____David Pita Bracho_____

Parent Signature

Date _____April 11th, 2016_____

Completed form can be returned, faxed to 860-927-6039 or scanned to schmidta@kent-school.edu

ECF No. 318-13 at 2.  Although this document was the School's exhibit, it was Bracho who introduced it into evidence at trial.  ECF No. 281 at 29.

## ii.  *Bracho Failed to Preserve This Issue*

Bracho argues that I "refused to give [his] proposed supplemental instruction" limiting the use the jury could make of the permission form.  ECF No. 310 at 27.  The day before the charge conference, Bracho submitted the following proposed instruction regarding the permission form:

> You have heard evidence about the Kent Road Biking Permission Form. I instruct you that the Permission Form is relevant only for the purpose of showing the activity description provided by Kent School to Danilo and his family. The Permission Form provides no evidence, and you may not find, that Danilo or his brother or his mother waived any claims against Kent School for injuries suffered by Danilo during the Road Biking activity or that they assumed any risks associated with the Road Biking activity or that they released Kent School from any liability for injuries caused to Danilo during the activity. You may not rely upon the Permission Form and the information contained in the Permission Form for the purpose of attributing fault to Danilo or his family. For these reasons, it is also irrelevant to any issues in the case whether Danilo's brother David is or is not his legal guardian.

ECF No. 275 at 1.  At the charge conference, I told both counsel that I had reviewed this proposal and then discussed the issue with them.  ECF No. 296 at 4-7.  I then formulated a shorter version of the proposal and allowed both counsel to comment, as follows:

> THE COURT: I may have led us down the wrong path [in an earlier draft of the jury instructions] by, in effect, telling the jury what they couldn't consider it for instead of using [Bracho's counsel's] more affirmative language.  Let me see if I can come up with something now and I'll run it by you.  So what … if I said: 'I instruct you now that you may not consider the permission form that was admitted into evidence as any indication that the Plaintiff or his family waived their right to bring this lawsuit or released the Defendant from liability.  You may consider the form for such other purposes as are consistent with the evidence and these instructions'?"
> [BRACHO'S COUNSEL]: *That's acceptable to the Plaintiff.*
> [THE SCHOOL'S COUNSEL:] That's acceptable, Your Honor.

*Id.* at 7-8 (emphasis added).  Because I included verbatim the language Bracho's counsel found

"acceptable" in my jury instructions, ECF No. 288 at 7, Bracho cannot now complain that I did

not include the additional language in his proposal.   *Dinelle*, 557 F. App'x at 22 ("By requesting

and approving the qualified immunity instruction, Henry invited the errors of which he now

complains."); *United States v. Fulford*, 267 F.3d 1241, 1247 (11th Cir. 2001) (defendant waived

right to challenge instruction where defense counsel stated "the instruction is acceptable to us":

"[B]ecause we find that the district court relied upon [defendant's] explicit acceptance of its

proposed instruction in submitting that instruction to the jury, we conclude that [defendant] has

waived his right to appeal that instruction.").  Although I told counsel that they were "preserved"

as to requests to charge that I improperly refused to give, ECF No. 296 at 2-3, I did not suggest

to them that they could still object even after I gave a modified version of a party's proposal with

the express approval of that party's counsel.[14]

### iii.  *Bracho's Argument Fails on the Merits*

Even if Bracho had insisted at the charge conference that I give his limiting instruction

regarding the permission form as he originally proposed, however, I would not have done so, for

several reasons.  First, it would have unduly restricted the School's proof.  It was not accurate, as

Bracho's proposed charge asserted, that the permission form was "relevant only for the purpose

of showing the activity description provided by the School to [Bracho] and his family."  ECF No.

275 at 1.  The form was also relevant because it included admissions by Bracho (and his adult

brother, who signed for him) that he "has biking experience" and "is familiar with basic safety

---

[14] Later in the charge conference—just as we were wrapping up the discussion of the comparative negligence instruction—Bracho's counsel orally requested what was apparently a new instruction "on no contributory negligence by the family … because there's been a considerable amount of implicit and explicit blaming of [Bracho's] mom and David [Bracho's brother,] particularly as it pertains to their knowledge of the permission form."  ECF No. 296 at 75-76.  I declined to give this instruction.  *Id.*  As shown, I had already addressed the permission form in an instruction Bracho's counsel found "acceptable"; and as I explain below, the proposed new instruction "on no contributory negligence by the family" would have been erroneous and confusing.

precautions"—evidence the School used to rebut Bracho's theories that it had been negligent in "failing to provide [him] adequate training or instruction before and during the road biking activity" and "failing to communicate to [him] … safety precautions required to keep him safe while cycling on the road …."   ECF No. 288 at 19.  It was also relevant to Bracho's theory that the School had "fail[ed] to warn [him] about the risks of the road biking activity," *id.*, because it communicated to Bracho and his family what they could reasonably expect of the road biking activity—including that he would at times "not be accounted for" and "riding … without immediate supervision" "on roads that will be shared with cars."  ECF No. 318-12 at 2.  More generally, the use of such a form spoke to the School's overall management of the road biking activity, a point Bracho illustrated by cross-examining Hinman about his failure to procure the signed form from Bracho before he took his first ride.  ECF No. 282 at 73–74, 78.  Indeed, had the School failed to obtain written permission from Bracho's family before the accident, Bracho surely would have spotlighted that omission as evidence of negligence in the management of the road biking activity.

Second, it is unclear how the jury might have concluded that it could use the form to "attribut[e] fault to Danilo or his family," as Bracho's proposed instruction warned against.  To begin with, as I explained to Bracho's counsel at the charge conference, there was no issue in the case concerning *his family's* negligence.  ECF No. 296 at 75–76.  Before trial, I granted Bracho's motion in limine concerning contributory negligence by Bracho's parents, ECF No. 247, and by the time of trial, Bracho was the only plaintiff in the case, as I instructed the jury.  ECF No. 288 at 19 ("Danilo Bracho is the only plaintiff in this case."); *see also* note 2, *supra*.  My instruction on comparative negligence did not mention the permission form or Bracho's mother or brother,

and tracked the standard Connecticut jury instruction on comparative negligence.[15]  ECF No. 288 at 23-24; *see* Connecticut Judicial Branch, Civil Jury Instructions, §§ 3.5-1–3.5-4.  The three specifications of comparative negligence it included focused on Bracho's conduct at the time of the accident, making no reference to actions by him, his brother, or his mother before the time of the accident.  ECF No. 288 at 23.  And defense counsel did not mention the permission form or Bracho's family members during his brief discussion of comparative negligence in closing argument.  He told the jurors, "Kent School does not believe anyone is at fault for this accident" and "Kent School is not blaming [Bracho]."  ECF No. 297 at 94.  In his only reference to comparative negligence, he then added that if the jurors were inclined to find fault, "we believe that [Bracho] bears more responsibility than the school" because "any biker is responsible for his or her safe operation of a bike." *Id.*  In short, adding an instruction to the jurors that they could not find persons who were not parties—Bracho's mother and brother—to be "contributorily negligent," ECF No. 296 at 75–76, did not align with the issues in the case and risked confusing the jury.[16]

Third, it is likewise unclear what the proposed instruction that Bracho and his family did not "assume[] any risks associated with the Road Biking activity" would have added to the instruction I gave, which told the jurors they could not consider the permission form as any

---

[15] The Connecticut General Assembly adopted a regime of comparative negligence in lieu of contributory negligence "to ameriliorate the harshness of the complete bar to liability resulting from the common law defense of contributory negligence." *Kramer v. Petisi*, 285 Conn. 674, 682 n.8 (2008) (discussing Conn. Gen. Stat. § 52-572h(b)).

[16] For the same reasons, I did not give Bracho's written request to charge entitled "no parental/guardian contributory negligence."  ECF No. 193-7 at 12–13.  That request also improperly marshaled evidence—and in ways that were misleading.  It stated as follows: "There has been some testimony and evidence about what Danilo's mother and brother may have … failed to do prior to [Bracho's] joining Road Biking.  For example, you have heard evidence that … they allowed and/or did not prevent him from [joining] even though they knew he was a novice unskilled cyclist."  But the School did not suggest at trial that Danilo's mother or brother had erred in failing to prevent him from joining the road biking activity "even though they knew he was a novice unskilled cyclist."  To the contrary, the School argued that Bracho was a competent rider who knew how to operate a bike and understood safety precautions.  *See* ECF No. 297 at 74–75.

indication that Bracho or his family had waived their rights or released the Defendant from liability.  Further, Connecticut law does not recognize the defense of assumption of the risk in negligence cases, Conn. Gen. Stat. § 52-572h(l), and that issue was not in the case.  Bracho now points to snippets from the School's closing argument, asserting that defense counsel's mentions of the permission form and Bracho's family members were attempts to inject the doctrine of assumption of risk into the case.  ECF No. 310 at 27-28.  But defense counsel never mentioned assumption of the risk during his closing argument, and his references to the permission form in closing were consistent with the proper uses of the form identified above, i.e., rebuttal of Bracho's own theories of negligence.  *See, e.g.*, ECF No. 297 at 74 ("His family agreed in the permission form that he knew how to ride a bike …."); *id.* at 77 ("Kent School made sure [Bracho's mother and brother] were fully aware of what Danilo was doing through notice such as the permission form."); *id.* at 80 ("The bike activity was … described in a permission form that [Bracho] and his brother read and [the brother] signed …."); *id.* (responding to Bracho's counsel's criticism that Bracho was allowed to ride before his brother signed the form); *id.* at 81 ("By signing that form, David acknowledged that [Bracho] had enough bike riding experience for the activity.").[17]

Finally, there was no reason to instruct the jury about the "irrelevan[ce]" of legal guardianship—the final point from Bracho's written that I did not include in my instruction—because it was undisputed that the School had obtained a signature from an adult member of

---

[17] Further, while Bracho casts defense counsel's closing argument in a different light, ECF No. 310 at 27-28, contending that it invited the jurors to find that Bracho and his brother "assumed the risk," his assertion that I should have given a "supplemental instruction"—presumably immediately after defense counsel's argument—to address the "manifestly prejudicial and specifically prohibited argument," *id.* at 28, fails for lack of preservation: Bracho never requested such a supplemental instruction.

Bracho's family on his behalf, which was the only relevance of the identity of the signer of the form for purposes of assessing the School's negligence.

*iv.  Bracho Has Failed to Show Prejudice*

For the same reasons set forth above in my discussion of Bracho's first claim of instructional error, Bracho has also failed to show that any error was harmful.  Further, as to the claim that I erred by failing to add Bracho's proposed language to my instruction on comparative negligence, there is yet another reason the general verdict rule does not help him:  It *is* clear from the jury's verdict that any failure to tell the jury that it could not consider the permission form as evidence of Bracho's (or his family's) comparative negligence did not affect the verdict, because the jury never reached the issue of comparative negligence.

### C.  The Weight of the Evidence

Finally, Bracho asserts that the verdict "is against the weight of the evidence."  ECF No. 30 at 41.  It should be apparent at this point why I do not agree with that assertion.  Bracho's brief on this point echoes his closing argument.  He strings together snippets of testimony from the School's liability experts, ECF No. 310 at 31-32, but both experts concluded that the School had complied with the standard of care and was not negligent.  He speculates about how the accident happened, but, as shown, there is little evidence on that point and what evidence there was pointed to Bracho's reaction upon seeing the truck, not something the School did or did not do.  ECF No. 310 at 34.  Finally, he argues, again, that the School should have excluded Bracho from the road biking activity, but he points to nothing in the record showing why it was negligent not to do so.  *Id.* at 37.  After weighing the evidence myself, I conclude that the verdict in this case was neither "seriously erroneous" nor a "miscarriage of justice."  *Song*, 957 F.2d at 1047.

### IV.    CONCLUSION

For the reasons above, the motions for new trial (ECF No. 307, 310) are DENIED.

IT IS SO ORDERED.


_____/s/_____

Michael P. Shea, U.S.D.J.


Dated:        Hartford, Connecticut
              January 21, 2022